The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to Attorney Lerman, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. I'm Attorney Kevin Lerman on behalf of Angel De La Cruz. With the Court's permission, I'd like to save two minutes for rebuttal. You may have it. Thank you. May it please the Court. For purposes of the broadly phrased 1994 safety valve, Mr. De La Cruz's conviction was for a covered offense. Because this is an issue of statutory interpretation, I'd like to turn first to why a plain reading of 3553F's inclusion of Section 960 encompassed Mr. De La Cruz's combined MDLEA 960 offense here. Then I'd like to discuss why 3553F is at best ambiguous in meaning and finish by discussing how the history and purpose of 3553F and related provisions rendered this combined MDLEA 960 offense a covered safety valve offense under three of the most applicable canons of interpretation. Starting with the plain text, the 1994 law enacting 3553F came in a section alone called limitation on applicability of mandatory minimum penalties in certain cases. By Congress's own terms, it focused on giving low-level drug trafficking defendants relief from mandatory minimum penalties. It is broadly phrased at every turn, referencing offenses under entire sections of Title 21, including as relevant here, Section 960. The plain text inquiry comes down to whether offense under Section 960 included Mr. De La Cruz's offense here. Because the provision is squarely focused on penalties and is so broadly described, it must be read to include combined MDLEA 960 offenses. When it comes to offense penalties, the MDLEA is inextricably linked to the penalty provision here. MDLEA penalties rise as they did in 1986 and fall as they did in 1994 with Section 960. Mr. Lerman, excuse me. What do you say to the fact that Congress itself apparently did not read the section in the way that you advocate because they felt necessary to amend it in the First Step Act to specifically include MDLEA offenses? The First Step Act, I have two responses to that point. The First Step Act was enacted by us by a separate Congress. That's true. Two and a half decades later, so the key to looking at the intent would be to look at the original Congressional Act. And the inclusion, I don't think much can be read into it. The inclusion in the First Step Act could very well have been to clarify that courts like the D.C. Circuit had it right and it was correcting erroneous interpretations. Well, I think you're on shakier ground when you say that because Congress went to some pains to put this provision in the First Step Act under the category of broadening of protections. Broadening was the word that Congress used, not clarifying, although there were parts of the First Step Act which were in the title of the legislation broadening. But this court does have precedent limiting the effect of the title of the legislation and focusing on the text of the legislation. And it most certainly broadened the inclusion of various categories of criminal history. So broadening could very well be referred there. And there is authority cautioning looking to deeply into the title of legislation. Mr. Lerman, I think there is a more fundamental problem which is a bit reminiscent of Justice Scalia's, you know, you don't hide elephants. Here, the Congress could have very clearly expressed that MDLEA offenses were offenses subject to the safety valve and it did not. It takes a later judicial construction by the D.C. Circuit employing court-fashioned rules of construction to come up with the argument that you are now making. I doubt that Congress at that time that they first passed this statute had in mind that someday a court would do what the D.C. Circuit has decided. I'm not in any way denigrating the D.C. Circuit opinion, but I'm trying to get to what Congress actually at the time. Judge Linz, I would respond with two points. The first is that looking to the meaning of what offense under meant at the time that safety valve was passed. A broad meaning of offense under is evident from two things, Supreme Court precedent and the use of the term in the guidelines at the time. Why does it matter what was going on at the guidelines at the time? Because the background of 2D1.1 describes quantity ranges in the same terms as safety valve as applying to offenses under 21 U.S.C. 841 and 960 with no mention of MDLEA offenses because there was already a direct link between MDLEA 960 and because the provision focused on the penalties that were included in 960. Congress wouldn't have needed to specify and Congress is presumed to know the state of the law at the time. The second would be Supreme Court precedent which courts weren't confronted in. The three courts that came out in the opposite direction weren't confronted with the axiom that offenses are defined by legal provisions supplying their elements. Section 960 supplies the essential elements that trigger the mandatory minimum which is why under Elaine and Apprendi, 960's elements must be pleaded and proved. That key point wasn't before those other circuits. In any case, in any case, are you so certain none of that was argued to those circuits? It's true the opinions don't focus on that but the Fifth Circuit opinion more or less says that's irrelevant. We're looking at the plain language that Congress used. Have you actually gone back to see what was argued in those cases? No, I haven't. Okay, yet you're simply relying on your reading of the opinions. Yes, but I would point out since the court mentions the Fifth Circuit, that decision, the Fifth Circuit had an unusual precedent that it was following and it had already decided that there wasn't any ambiguity in 3553 F and even though it hadn't confronted that question and ambiguity is really a key concern here and I'd like to just finish since my time is about to run out that if there's any ambiguity here then the rule of lenity calls for resolution in Mr. de la Cruz's here in this circuit. It's been the law for two and a half decades that safety valve makes you really want us to resort to the rule of lenity. I thought your argument actually was we don't need a broad reading because there's a very precise reference here to offenses under 960 and even under a narrow reading you prevail. Yes, our analysis follows the analytical framework that the court follows first looking to the whether there's a plain meaning in the text but if in any case it is ambiguous it should be resolved in Mr. de la Cruz's favor. The D.C. circuit did not rely on the rule of lenity, am I correct? That's correct. All right, thank you. You have two minutes reserved. Thank you, Mr. Lerman. Please mute your device at this time. Attorney Perez, if you could unmute your device and introduce yourself on the record. Good morning, your honors, and may it please the court. Antonio Perez on behalf of the United States. The district court here correctly concluded as has the 11th, 5th, and 9th circuits that the plain language of the safety valve statute made clear that the MDLEA, that MDLEA offenses were not safety valve eligible at the time of Mr. de la Cruz's convictions. Counsel, if I might, we now know that in the First Step Act, even if Congress the first time around had intended to not make the safety valve available, Congress now makes it available to MDLEA offenses. We also know that it takes a fair amount to be eligible for the safety valve. And here, this particular MDLEA defendant is eligible. So how big is the group that is affected here? Either way, you know, if you win or if you lose? It would seem to be, it's a small group, your honor. It would just be people who were sentenced before the First Step Act who would otherwise be eligible for the safety valve because they qualify for the five criteria of the safety valve, but simply were not given the safety valve because the legal determination that the MDLEA was safety valve eligible. So it's a very small group of defendants. Okay, but your office is the best source of information as to that. Thank you very much for the concession. It's a very small group of people. That's what I would call a handful. So why is the government pushing this case? Is there something greater involved here? Well, I think what's greater involved is what Congress meant by the statute. And in any question of statutory interpretation, our goal is to try to determine Congress's intent. And the text of the statute clearly indicates that if Congress, as you had said earlier, if Congress had meant for MDLEA offenses to be safety valve eligible, it clearly could have done that. It clearly could have mentioned the MDLEA and the Title 46 provisions where the MDLEA was criminalized as it has repeatedly done so. In fact, in the very same act that created the safety valve statute, the Violent Crime Control and Law Enforcement Act of 1994, in another provision of that very same act, Congress added that it was unlawful to smuggle into the United States a firearm in connection with a list of specific statutes. And in that provision, it specifically listed the Maritime Drug Law Enforcement Act in parentheses 46 USC Appendix 1901 at sequentia. And it also listed by the word or, it listed the Controlled Substances Import and Export Act in parentheses 21 USC 951 at sequentia, which includes 21 USC 960. So Congress's own language in the safety valve statute juxtaposed with its language in another provision of the act that clearly showed that it viewed the MDLEA not as an offense under Section 960, but that it would have specifically referenced the MDLEA and Title 46, had it wanted to include it in the safety valve provision. This isn't the only, yes, Judge Gallardo. Yes. If you could turn to the text of 960 and help us understand your argument on that. Sure. I take it, for example, if we look subsection A3 referenced to 959. Yes. Do I understand that you agree that all that does, all A3 does is say that 959 offenses will be penalized as in B? It does, Your Honor. And Section 960A, what it does is that it incorporates by reference other provisions. It incorporates six specific statutory provisions and makes them offenses under 960A. Sure. What A simply does is it lists something, it gives us a number of a statute, and it says it'll be penalized, punished as provided in B. So I take it Section 959 would be an offense that is subject to the safety valve. Correct. That is correct, Your Honor. Well, how does, as I read 70503A, all it does is the exact same thing. It says an offense under 70, I'm sorry, 706, but it basically says an offense under 70503A shall be punished as provided in subsection B of 960. It does exactly the same thing that A does. And if I'm not wrong on that, then if A's specification that 959 shall be punished under B turns 959 into an offense under, for purposes of the safety valve, then if we have another statute that says that other statute shall be punished as provided in B, why doesn't that turn that into an offense that's under as provided in the safety valve? Because there's no indication, Your Honor, that that's what Congress meant when it put the language offense under 960. Well, right now I'm not looking for other things that Congress, I'm just looking at the text. Right. And the only vehicle whereby 959 becomes an offense under, subject to the safety valve, is the specification in A that it shall be punished as provided in B, then why wouldn't that same mechanism have the same effect when included in the MTLEA? Because there's no indication that that's what Congress meant by the wording offense under. Like I said, the Congress has specifically referenced the MTLEA in other lists when it wants to. In addition, Congress didn't use the wording offense under in the safety valve statute instead of penalized under or punished under, which it has used. How is 959 an offense under 960? Because it's specifically listed in 960A as an unlawful act. It doesn't say listed, it says under. And so if we turn to 960, what does 960 do with 959? It does nothing at all other than say it shall be punished as provided in B. And yet you agree that makes it an offense under 960. Well, it's an offense under section 960 because it's specifically listed in section 960A. So again, we have to think of what Congress meant by the offense under language in the safety valve provision and looking at that language. You would have us read under as listed, and that's your point. I would read offense under as it specifically contains that offense or the conduct that's criminalized or conduct is criminalized under that offense. So yes. Let's talk about that because Apprendi tells us that anything that one of the things that 960 does is say if you go over 25 kilos, you're in bigger trouble. And Apprendi tells us that is an element of the offense, isn't it? That is correct. But the fact that it's an element of the offense, all that means is that it needs to be put forth before a jury and proven beyond a reasonable doubt. It does not shed any light on what Congress meant in 1994, which Apprendi hadn't even happened at that point. So there's no indication. If it is an element of an offense, it's certainly not absurd to suggest it is part of the offense. Well, your honor, the key point is that it is an element of the offense, so it needs to be the word offense under that it meant to include any statutory provision that provided an element of the offense. There's simply nothing to indicate that. I'm asking a simple question. Is the drug quantity part of the offense? If we define part of the offense as something that contains an element of the offense, then yes. But again, that sheds no light on what Congress meant by the wording offense under in the safety valve statute in 1994. And again, the fact that it listed the MDLEA specifically by name and in reference to Title 46 in multiple other instances in the U.S. Code show that it was not Congress's intent to subsume the MDLEA under Section 960. In addition, if we look at the... Mr. De La Cruz's interpretation has various nefarious consequences. For example, if we look at the statutes that the safety valve does include, it includes 21 U.S.C. 841, which is domestic drug trafficking, and 21 U.S.C. 846, which is simply an attempt or conspiracy to engage in an offense under this subchapter, which includes 21 U.S.C. 841. So if we were to take Mr. De La Cruz's interpretation, the reference to 846 is completely superfluous. And I'm sorry, I hear Dan saying something. Is but we want you to answer questions. Judge Chiara has one and then I have one. Sure. No, I'm happy to be here until I've answered all of your questions. Good move, counsel. All right. And so, like I said, the reference to 846 in the safety valve provision would be completely superfluous under Mr. De La Cruz's interpretation. In addition, Section 860, which criminalizes an 841 offense near a protected location, such as a housing project or a school, that draws elements from Section 841. So potentially 860 would then be an offense under that would be safety valve eligible, which basically every court to consider that issue has rejected. Let me ask you one other question. Given what Congress included in the safety valve, can you think of any reason, any substantive reason, any purpose that would have led Congress to say, but let's not include the MDLEA? I would put forth Congress's justification for passing the MDLEA in the first place. And it says that drug trafficking on vessels is a serious international problem and a specific threat to the security and societal well-being of the United States. Drug trafficking on board vessels often includes people who are bringing the drugs in the first place to the country, and they're usually, you know, higher up on the food chain than your generic sort of domestic drug trafficker. Well, that's all true, but they've included drug importing as one of the offenses that is in the safety valve. That's correct, Your Honor. But in any event, you know, I would say that for whatever reason, Congress viewed the MDLEA offenders as somehow being worse offenders that should not be safety valve eligible. And I would point out that the safety valve is an exception to the rule, right? The rule is that you have a mandatory minimum sentences. The safety valve is an exception. Congress was clear in that it only wanted certain offenses to fall within that exception. And again, the text of the statute and the way in which Congress has used throughout time to refer to the MDLEA makes clear that in this case, they were not referring to the MDLEA. Counsel, here's my question. I started by asking you about the practical implications of the government's position as to the MDLEA. You, however, have given now a answer to Judge Kayada that if we were to adopt the argument made by your defendant here, that that would have implications for other statutes, which we should not open the door to, if I've understood it correctly. And you specifically mentioned 841, which is drug dealing near housing projects and schools that Congress did not want to give a in those instances. Are there other statutes other than 841 that you think would be affected that we would be opening the door to if we were to adopt the D.C. Circuit's ruling here? If I may, Judge, before he answers, is Judge Selya still on the line? I can't see him. Yes, I am. Okay. You can hear everything, Judge? Yes, I can. Okay. I'm sorry, Judge. We couldn't see your picture. I'm going to mute. Go ahead. I'm sorry to interrupt. Off the top of my head, Your Honor, 860 is the only one that comes to mind, which is drug trafficking near a protected location. But it would implicate... Rather than off the top of your head, I'm going to ask both counsel to, within 10 days of oral argument, to submit letters to us as to other statutory prohibitions that you think would be Your brother also has that 10-day period. I'd be happy to do that, Your Honor. In conclusion, I'd just like to make one final point in relation to what's something Judge Selya mentioned earlier. In 2018, the amendments did make clear that this was a broadening of the safety valve eligible to any MDLA offenses. No matter when they were sentenced, it could have easily done so, and it could have made that provision retroactive. It specifically said that it wasn't, that it was only effective for people convicted after the First Step Act was passed. Is there anything in the legislative history as to why Congress chose not to make it retroactive? There is an obvious answer, which is not burdening the court system with a bunch of petitions. But beyond that, is there a substantive reason that was given in the legislative history? I don't know one off the top of my head, but I'd be happy to add that to the 28-J letter if you'd like.  Absolutely, of course, Your Honor. So, at this point, if there are no further questions, since my time is up, we'd ask that you please affirm the District Court's judgment and sentence. Thank you. Thank you very much. Your brother now has two minutes of rebuttal. Attorney Perez, please mute your video, and Attorney Lerman, please reintroduce yourself on the record. Kevin Lerman on behalf of Mr. de la Cruz. I'd like to respond first to the government's point about whether Congress meant something about the MDLEA when it was mentioned specifically in the same package of legislation. A reference to the MDLEA in completely different provisions of law does not render the plain language any clearer here. In fact, the government conflates the stages of analysis. The court only looks to the broader context of legislation if the plain meaning of the text is unclear. You're the one who argued earlier that there was a lack of clarity here, and therefore, the rule of lenity should apply. That's correct. You can't have it both ways. What's your next argument? The argument there is that there's perfectly good reason to reference the MDLEA in narrower language when applying to other statutes. At the time, Congress created offenses, and the requirement to use much more precise language would have been present, for example, to add the MDLEA as a 924c predicate. But here, context is everything, and this was a remedial statute meant to be read broadly with a focus on penalties. Hence, the vividly broad reference by the House of Representatives that this was for a narrow class of defendants, those who were the Congress would have understood at the time, because of the common use of offense under, that 3553a was meant to include offenses including the MDLEA, which is why we asked the court to vacate and remand. All right. As you've heard, within 10 days, get us a Rule 28J letter on both of the points I discussed with your brother. Okay? Understood, Mother. Okay. Any further questions from the panel? No. No. Okay. Thank you very much, Mr. Lehrman. Thank you. That concludes argument in this case. Attorney Lehrman and Attorney Perez, you should disconnect from the hearing at this time.